IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Criminal Action No. 06-cr-00219-PSF

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTA LEIGH PRESTON,

    Defendant.

---

**ORDER ON MOTION TO SUPPRESS STATEMENTS
AND PENDING DISCOVERY MOTIONS**

---

This matter comes before the Court on the defendant's Motion to Suppress Statements (Dkt. # 15), filed July 11, 2006. The Government filed its Response to Defendant's Motion on July 25, 2006 (Dkt. # 21). This Court held a hearing on the motion on Monday, August 28, 2006. Also pending before this Court are two additional matters: Defendant's Request for Notice of 404(b) Evidence (Dkt. # 13) and Motion for Discovery (Dkt. # 14). The Government's Consolidated Response to these two motions was filed on July 25, 2006 (Dkt. # 20).

**I. BACKGROUND**

An indictment against Christa Leigh Preston was issued by the Grand Jury on June 7, 2006, alleging assault causing serious bodily injury against a person under the age of 16, in violation of 18 U.S.C. § 113(a)(7). Defendant moves to suppress the statements she made to the government on the day of her arrest.

A the hearing on August 28, 2006, the Court heard testimony from FBI Special Agent John Smith and from Defendant Preston. According to the parties' briefs and testimony at the hearing, on October 27, 2005, Ms. Preston took her son, DPJ, to the emergency room at Evan's Army Hospital, Fort Carson, Colorado. DPJ was suffering from serious burns on one of his hands. Def. Mot. at 1. A doctor's concerns regarding the cause of the child's injuries were reported to the U.S. Army Criminal Investigation Division ("CID"), a representative of which called for assistance from the FBI. Govt. Resp. at 2. At the hospital, Ms. Preston was questioned by two FBI Special Agents, Agent John Smith and Agent Martin Daniel, about her son's injuries. This questioning took place for about 30 minutes in the hospital room where DPJ was resting. Tr. 11:14-15. At the conclusion of the questioning, Ms. Preston signed a Consent to Search Form (Dkt. # 24), giving the FBI Agents consent to search her residence. Tr. 36:25-37:9.

The two FBI agents left Ms. Preston at the hospital and proceeded to her residence, which was located on the Fort Carson Army base. After her son was released, Ms. Preston drove in her own car from the hospital to her residence, stopping across the street to pick up her infant daughter from the babysitter. Tr. 81:19-24. Once Ms. Preston arrived home, the FBI agents, who drove separately, were joined by two CID officers and began a search of her home, including taking water temperatures and taking pictures. At some time after Ms. Preston arrived home, she spent time outside playing with her children and the neighbors. Tr. 69:20-22. After the search, Ms. Preston, two FBI agents, and one CID agent sat in the living room, where Ms. Preston

was questioned about her son's injuries. During the questioning, the agents asked if Ms. Preston would submit to a polygraph test. Ms. Preston declined, indicating that she did not trust polygraph tests. Tr. 71:15-22. At some point during the questioning, Ms. Preston made a statement that was confessional. The agents asked Ms. Preston to write the statement, so Ms. Preston went into the kitchen, followed by at least one FBI agent, and wrote and signed the statement. Govt. Exhibit 1.

There are significant discrepancies between the testimony of Agent Smith and the testimony of Ms. Preston with respect to the time of day the events occurred and the amount of time that Ms. Preston was questioned. FBI Agent Smith testified that the questioning at Ms. Preston's home was completed and the written statement signed by approximately 1:00 p.m. Tr. 59:11-17. In contrast, Ms. Preston testified that her son was not burned until approximately 12:00 p.m., and that people were at her home until almost 8:00 p.m. Tr. 74:22-25; 83:18-20. However, the precise times do not impact the analysis below.

## II. MOTION TO SUPPRESS

In the Motion to Dismiss, defendant asserts that Ms. Preston's statement was the result of a custodial interrogation, before which Ms. Preston was not given a *Miranda* warning. Def. Mot. at 2. Defendant also argues that Ms. Preston did not voluntarily, knowingly, and intelligently waive her right to a *Miranda* warning. Def. Mot. at 5. The Government argues that Ms. Preston was not in custody for the purposes of a *Miranda* warning. Govt. Resp. at 2. Moreover, the Government contends that Ms. Preston's statements were voluntary. Id.

The government has the burden of proving that statements made by a defendant during a custodial interrogation were given after a *Miranda* advisement or that no *Miranda* advisement was necessary. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). If a *Miranda* advisement was necessary but not given, the government must prove by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived her right to a *Miranda* advisement. *Id.; United States v. McCullah*, 76 F.3d 1087, 1100 (10th Cir. 1996). Because no *Miranda* warnings were given before Ms. Preston made her statement, the Court will first decide whether a *Miranda* advisement was necessary.

### A. "In Custody"

An individual is entitled to a *Miranda* warning only where she is subject to custodial police interrogation. *United States v. Rogers*, 391 F.3d 1165, 1169 (10th Cir. 2004); *Miranda*, 384 U.S. at 444 ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."). The parties do not dispute that Ms. Preston was interrogated. Therefore, this Court must decide whether Ms. Preston was "in custody" for purposes of *Miranda.*

A person is "in custody" for the purposes of *Miranda* where her "'freedom of action is curtailed to a degree associated with formal arrest.'" *Rogers*, 391 F.3d at 1169 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). This determination is based on the totality of the circumstances and whether a reasonable person in the defendant's position would view the situation as equivalent to formal arrest. *Rogers*,

391 F.3d at 1169-70; *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983). A reasonable person "'does not have a guilty state of mind and does not have peculiar mental or emotional conditions that are not apparent to the questioning officer.'" *Rogers*, 391 F.3d at 1169 (quoting *United States v. Erving L.*, 147 F.3d 1240, 1247 (10th Cir. 1998)).

Looking at the totality of the circumstances, a reasonable person in Ms. Preston's position would not have believed that her freedom was restricted to a degree associated with a formal arrest. First, the majority of the questioning took place at Ms. Preston's home. Courts are less likely to find a suspect "in custody" where she is questioned in "familiar or at least neutral surroundings." *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994).

Second , the nature of the questioning weighs against the conclusion that Ms. Preston was in custody. *See e.g. Rogers*, 391 F.3d at 1170-71 (emphasizing that where police officers are courteous and nonthreatening, a court is less likely to find that the suspect was in custody). The testimony suggests that the officers were respectful and not intimidating during questioning. No threats were made and there is no evidence that weapons were displayed. Tr. 59:18-25. The officers did repeatedly tell Ms. Preston that they were concerned about the child and wanted to know the truth. While there were three to four officers in her home during the search, three officers were present during questioning, and all the parties were sitting. The Tenth Circuit has held that the presence of five officers is not sufficient to show that an individual was "in custody" where the individual was in his own home, was not harassed, the

officers had permission to be there, and no weapons were drawn.  *United States. v. Rith*, 164 F.3d 1323, 1332 (10th Cir.), *cert. denied*, 528 U.S. 827 (1999).

Third, Ms. Preston consented to the search of her home and, accordingly, consented to the presence of the FBI agents.  While at the hospital, she signed a Consent to Search Form (Dkt. # 24-2).  This form clearly and unequivocally states that Ms. Preston had been advised of her right to refuse consent and that she gave her consent voluntarily.  Nothing about the circumstances at the hospital, where Ms. Preston signed the consent form, indicates that her signature was obtained under duress.  The form does no indicate Ms. Preston was required to be present for the search that would occur on base housing.

Fourth, Ms. Preston's unwillingness to submit to a lie detector test belies her claim that she did not feel that she could leave the presence of the officers or refuse to answer questions.  Def. Motion to Suppress at 2; Tr. 73:6-8.  Her unqualified refusal to submit to the test demonstrates her autonomy during questioning to proceed only as she deemed appropriate.

Finally, Ms. Preston had substantial freedom of movement throughout law enforcement interaction with her and questioning.  She left the hospital in her own car without police escort, she stopped by the babysitter's to pick up her infant daughter, and she played with the children and the neighbors in her front yard.  Ms. Preston testified that no one told her that she had to go home immediately after leaving the hospital, and she testified that despite this she expected to be questioned again when she arrived home.  Tr. 82:9-10; 84:12-15.

Thus, from all appearances Ms. Preston knew she was not being followed when she drove away from the hospital, she had the ability to avoid returning home if she wished and in fact did not do so directly, there was no immediate need for her to return home while law enforcement officers were there, and her answering of questions at her home would not occur unless she was willing to submit to them. All this supports the voluntariness of Ms. Preston in answering the questions posed by law enforcement officers that lacked threats or intimidation. She was not mistreated in any way.

Finally, the Court notes the uncommon circumstances of this case involving key events on a military base. In some circumstances, the military is not bound by the same procedural formalities for conducting a search that are imposed upon civilian law enforcement agencies. *See United States v. Brown*, 784 F.2d 1033, 1036 (10th Cir. 1986) ("[P]rocedures have been adapted to fit the military system of justice, which, in a technical sense, are not identical to the procedures used in the civilian system of justice."). These circumstances did not impact the Court's analysis because the interrogations at issue were not conducted under the authority of military law. Traditional Fourth and Fifth Amendment considerations involving police conduct have been applied.

### B. Voluntary, Knowing, and Intelligent Waiver of Rights

A person can only waive her rights under *Miranda v. Arizona* where she is entitled to those rights. *See United States v. Dozal*, 173 F.3d 787, 793-94 (10th Cir. 1999). Because Ms. Preston was not "in custody," she had no *Miranda* rights to waive and thus was not entitled to a *Miranda* warning. *Schneckoth v. Bustamonte*, 412 U.S.

7

218, 247 (1973) ("Miranda, of course, did not reach investigative questioning of a person not in custody . . . ."); *Dozal*, 173 F.3d at 793-94.  Accordingly, the Court need not decide whether Ms. Preston voluntarily, knowingly, and intelligently waived her *Miranda* rights.

### III.  OTHER PENDING MOTIONS

Defendant filed a Request for Notice of 404(b) Evidence (Dkt. # 13) and a Motion for Discovery (Dkt. # 14).  The Government had no objection to the Defendant's 404(b) Request and intends to provide notice 21 days prior to the trial of this matter.  Govt. Resp. at 1.  With respect to Defendant's Motion for Discovery, the Government notes that much of the requested information was requested in the Discovery Conference Memorandum and Order (Dkt. # 11).  The Government also notes that specific statements, as requested in paragraph 3, may not have been documented but will be disclosed to the extent the Government is aware of them.  Finally, the Government has no objection providing rough notes, to the extent they exist.

### IV.  CONCLUSION

For the reasons set forth above, the defendant's Motion to Suppress Statements (Dkt. # 15) is DENIED.  The defendant's Request for Notice of 404(b) Evidence (Dkt. # 13) is GRANTED.  Any objections to or motions regarding this evidence should be made at the appropriate time.  The Defendant's Motion for Discovery (Dkt. # 14) is GRANTED to the extent that the requested items were not previously provided to the defendant as ordered in the Discovery Conference Memorandum and Order (Dkt. # 11).  The final trial preparation conference remains set for **Wednesday, October 25, 2006**

**at 8:30 a.m.,** and the four-day jury trial remains set for **Monday, November 6, 2006 at 1:30 p.m.**

  DATED:  September 22, 2006

                BY THE COURT:

                *s/ Phillip S. Figa*
                _____
                Phillip S. Figa
                United States District Judge